**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| WMS GAMING, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-12-1245 |
| § | SEALED |
| VIP SLOT DISTRIBUTORS, INC. and § | |
| ALTAF K. MAKANOJIYA, § | |
| § | |
| Defendants. § | |

**ORDER GRANTING PLAINTIFF'S *EX PARTE*
APPLICATION FOR TEMPORARY RESTRAINING ORDER**

The plaintiff, WMS Gaming, Inc. ("WMS"), filed an *Ex Parte* Application for Temporary Restraining Order and Motion for Preliminary Injunction. (Docket Entry No. 4). Based on WMS's Application and the supporting Memorandum of Law, the supporting declarations and documentary evidence, and the applicable law, this court enters the following findings of fact, conclusions of law, and temporary restraining order against VIP Slot Distributors, Inc. ("VIP") and Altaf K. Makanojiya.

**I.   THE APPLICABLE LAW**

1. Before issuing a temporary restraining order, a court must find that four conditions are present:

> (1) a substantial likelihood that the plaintiff will prevail on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) a showing that the threatened injury to the plaintiff outweighs the potential harm to defendants if the injunction issues; and (4) a showing that issuance of the injunction will not disserve the public interest.

*Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). A court may issue a temporary restraining order without notice to the other party or its attorney only if:

>(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).  Among other requirements, such an order must "describe the injury and state why it is irreparable [and] state why the order was issued without notice[.]"  FED. R. CIV. P. 65(b)(2).

## II.  FINDINGS AND CONCLUSIONS

1. WMS has filed a five-count complaint against the defendants for copyright piracy and infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*. (Count I); infringement and counterfeiting of a federally registered trademark in violation of 15 U.S.C. § 1114(1) (Count II); false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) (Count III); unfair competition and trademark infringement in violation of Texas common law (Count IV); and conversion and equitable restitution in violation of Texas common law (Count V).  As to each count, WMS has shown that: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that WMS will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction, if issued, might cause defendants; and (4) granting the injunction will not disserve the public interest.  WMS also has shown that relief in the form of a temporary restraining order without notice is required.

2. WMS owns and has registered or applied to register the copyrights in graphic computer images contained in each of the following five WMS Games (collectively, the "five WMS Games"): *Jackpot Block Party* (Copyright Reg. VA 1-694-278), *Jewels of Africa* (Copyright Reg. VA 1-705-132), *Mayan Sun* (Copyright Reg. VA 1-688-877), *Sabertooth* (Copyright Reg. VA 1-

705-196), and *Wild Stampede* (application filed February 28, 2012). The works covered by these registrations and applications are referred to as the "Copyrighted Works."

3. WMS has trademark rights in the titles of its games (the "Game Trademarks"), including the marks JACKPOT BLOCK PARTY, JEWELS OF AFRICA, MAYAN SUN, SABERTOOTH and WILD STAMPEDE, as well as in its house marks, including WMS and WMS GAMING (each appearing in several different logo formats), and continues to use its house mark WILLIAMS (referred to as the "WMS Trademarks").

4. As a result of the widespread use and display of the WMS Trademarks and Game Trademarks (collectively referred to as the "Trademarks") on the Internet, in advertising, at casinos and other gaming locations, and on the WMS gaming machines and other WMS products, the Trademarks have built up secondary meaning and extensive goodwill.

5. In addition to its common-law rights in the Trademarks, WMS has registered its WMS Trademarks and nearly all of its Game Trademarks on the Principal Register of the United States Patent and Trademark Office. WMS's registered Trademarks include: JACKPOT BLOCK PARTY (U.S. Trademark Reg. No. 3,796,325); JEWELS OF AFRICA (U.S. Trademark Reg. No. 3,901,647), MAYAN SUN (U.S. Trademark Reg. No. 3,496,586); SABERTOOTH (U.S. Trademark Reg. No. 3,832,619); WILD STAMPEDE (U.S. Trademark Reg. No. 3,897,757); and WMS and Design (U.S. Trademark Reg. No. 2,695,864).

6. The sworn declarations and documentary evidence submitted by WMS sufficiently show for the purpose of issuing this TRO that the defendants are distributing pirated WMS software that contains copies[1] of, and causes the display of, the Copyrighted Works. WMS has shown a

---

[1] "Copies" are statutorily defined as "material objects . . . in which a work is fixed by any method . . . and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101.

likelihood of success on its copyright-infringement claim against defendants VIP and Makanojiya, who is a director and the president of VIP.

7. WMS has sufficiently shown for the purpose of this TRO that its Trademarks WMS and Design, JACKPOT BLOCK PARTY, JEWELS OF AFRICA, MAYAN SUN, SABERTOOTH and WILD STAMPEDE are registered on the Principal Register of the U.S. Patent and Trademark Office and nearly all of WMS's other Trademarks are also registered. WMS has also sufficiently shown extensive use in commerce of its trademarks in connection with its goods, giving rise to enforceable trademark rights under the common law. WMS has demonstrated ownership of valid trademark rights.

8. WMS has sufficiently shown for the purpose of this TRO that the defendant VIP's sales of pirated WMS software are likely to result in confusion. WMS has sufficiently shown that it is likely to succeed on the merits of its claim that the sales of pirated WMS software and of the "WMS Slimline Gaming Machines" infringe the WMS Trademarks.

9. WMS has sufficiently shown for the purpose of this TRO that it is likely to succeed on its claim that defendant Makanojiya—as an active participant in VIP's promotion, sale, and delivery of the pirated WMS software—is individually liable for these infringements.

10. WMS has sufficiently shown that it will suffer irreparable harm in the absence of a temporary restraining order as a result of the defendants' piracy and trademark infringement. WMS has sufficiently shown that the defendants are distributing Pirated Game Cards without ensuring that they will be installed in genuine WMS gaming machines properly equipped to deliver the presentation of a genuine WMS video-slot-machine game. WMS has sufficiently shown that it is unable to ensure that the pirated Game Cards VIP sells are manufactured using high-quality compact flash cards and reliable duplication methodology. Deviations from WMS's quality-control standards

threaten serious damage to the reputation, goodwill, and integrity of WMS's copyrighted materials and trademarks. WMS has also sufficiently shown for the purpose of this TRO that the defendants sell their counterfeit and pirated software in direct competition with WMS's genuine Conversion Kits, but at a significantly lower price. The defendants' continued use of WMS's software will reduce WMS's profits, and ascertaining the amount of such loss will be difficult.

11.     WMS has sufficiently shown that the injury it will suffer absent a TRO outweighs injury to the defendants from the issuance of the TRO. Because VIP deals in used gaming machines, parts, and other products that will not be seized or impounded, the temporary restraining order will have only a limited impact on their business operations.

12.     WMS has sufficiently shown that a TRO serves the public interest in effective regulation of the gaming industry.

13.     Finally, relief in the form of a temporary restraining order without notice is necessary to ensure that the defendants do not hide, relocate, alter, or destroy the pirated copies of WMS's software, the equipment used to create such pirated copies, and any records of such piracy.

### III.    ORDER

1.     The plaintiff's *Ex Parte* Application for Temporary Restraining Order, (Docket Entry No. 4), is granted.

2.     The defendants, VIP Slot Distributors, Inc. and Altaf K. Makanojiya, and their officers, agents, servants, employees, and attorneys, along with those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are temporarily restrained and enjoined from the following:

    (a)     manufacturing, reproducing, copying, duplicating, purchasing, selling, trading, renting, exchanging, lending, distributing, transporting, transmitting, disposing of,

advertising, promoting, or otherwise dealing with unauthorized copies of WMS gaming software, including but not limited to, the following copyrighted works: *Jackpot Block Party* (Copyright Reg. VA 1-694-278), *Jewels of Africa* (Copyright Reg. VA 1-705-132), *Mayan Sun* (Copyright Reg. VA 1-688-877), *Sabertooth* (Copyright Reg. VA 1-705-196), and *Wild Stampede* (pending copyright application filed February 28, 2012);

(b)   manufacturing, reproducing, copying, duplicating, purchasing, selling, trading, renting, exchanging, lending, distributing, transporting, transmitting, disposing of, advertising, promoting, or otherwise dealing with gaming machines, computer boards, memory cards, game cards, operating system cards, WMS gaming software, WMS operating system software, or any other articles that contain or bear unauthorized copies of WMS's trademarks, including but not limited to, unauthorized copies of the following trademarks: JACKPOT BLOCK PARTY, JEWELS OF AFRICA, MAYAN SUN, SABERTOOTH, WILD STAMPEDE, WMS, WMS and Design, WMS GAMING, and WILLIAMS; and other trademarks owned by WMS or any abbreviation thereof such as "JPB Pty";

(c)   advertising, promoting, offering to sell, selling, or distributing any "Slimline" or other non-WMS gaming machine in which a WMS CPU Board or WMS gaming software has been installed, or identifying, promoting or advertising any non-WMS gaming machine as a "WMS" or "WMS Slimline" machine;

(d)   using WMS's copyrights or WMS's trademarks in a manner likely to cause confusion, mistake, deception, or misunderstanding that the defendants or their products are affiliated or associated with WMS;

(e) engaging in trademark infringement, copyright infringement, unfair trade practices, or unfair competition against WMS or misappropriation of WMS's trademark and copyright rights;

(f) destroying, altering, secreting, transferring, deleting, or otherwise disposing of any documents or records, whether on paper, in electronic format, or on any other medium, that relate to: (i) the manufacture, reproduction, advertisement, offer for sale, offer for distribution, sale, distribution or receipt of, or payment for unauthorized copies of WMS software or other copyrighted works or any "Slimline" gaming machines; (ii) the unauthorized copies of WMS software, copyrights or trademarks, or the "Slimline" gaming machines; or (iii) the unauthorized use or copying of WMS's software, copyrighted works or trademarks.  The defendants must instead take affirmative steps necessary to retain such records, whether by copying, collection, backup, or otherwise, either on paper, in electronic format, or on some other medium;

(g) destroying, altering, secreting, transferring, deleting or otherwise disposing of computer equipment, duplication equipment, software, hardware, computer disks, and other things used in connection with the manufacture, reproduction, advertisement, offer for sale, sale or distribution of any unauthorized copies of WMS software, copyrights or trademarks, or of any of defendants' "Slimline" gaming machines, or removing any such equipment or other things currently located at the office/warehouse facility at 5914 S. Loop, Houston, Texas 77033 from that facility;

(h) destroying, altering, secreting, transferring, deleting, or otherwise disposing of email, whether printed or in electronic form, relating to the acquisition, manufacture, reproduction, advertisement, offer for sale, offer for distribution, sale or distribution of any unauthorized copies of WMS software, copyrights or trademarks, or of any of defendants' "Slimline" gaming machines, or that relate to defendants' use of any of WMS's trademarks;

    (i) allowing any documents, records, or things described in Paragraphs 2(f), (g), and (h) above, to be destroyed, altered, secreted, transferred, deleted, or otherwise disposed of; or

    (j) attempting, causing, or assisting any of the above-described enjoined acts to occur.

  3. The plaintiff must serve this Temporary Restraining Order, together with its *Ex Parte* Application for Temporary Restraining Order and for Preliminary Injunction, on the defendants. The plaintiff must also serve copies of all sealed documents currently on the docket on the defendants.

  4. The court will hold a Preliminary Injunction Hearing on **April 30, 2012 at 12:00 p.m.** CDT in Courtroom 11-B located at the U.S. Courthouse, 515 Rusk, Houston, Texas 77002.

  5. This Temporary Restraining Order will extend until **May 8, 2012 at 5:00 p.m. CDT** unless otherwise ordered by the court.

  6. The plaintiff must post a cash or surety bond, in the amount of $5,000.00 as security. This amount is adequate for the payment of such damages as the defendants may be entitled to recover as a result of this order. The plaintiff may post a single bond to comply with the bond requirement.

  SIGNED on April 24, 2012, at 4:15 p.m. at Houston, Texas.

                 _____
                   Lee H. Rosenthal
                   United States District Judge