IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WMS GAMING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-1245 |
| | § | SEALED |
| VIP SLOT DISTRIBUTORS, INC. and | § | |
| ALTAF K. MAKANOJIYA, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFF'S EX PARTE
APPLICATION FOR ORDER DIRECTING THE IMPOUNDMENT OF
UNAUTHORIZED COPIES AND SEIZURE OF COUNTERFEIT GOODS**

The plaintiff, WMS Gaming, Inc. ("WMS"), filed an Ex Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction against the defendants, VIP Slot Distributors, Inc. ("VIP") and Altaf K. Makanojiya. (Docket Entry No. 4). This court granted that application. (Docket Entry No. 18). WMS also filed an Ex Parte Application for an Order Directing the Impoundment of Unauthorized Copies and Seizure of Counterfeit Goods. (Docket Entry No. 2). Based on WMS's Application and the supporting Memorandum of Law, the supporting declarations and documentary evidence, and the applicable law (in addition to the reasons stated in the ex parte TRO), this court enters the following findings of fact, conclusions of law, and order.[1] The Preliminary Injunction Hearing, currently scheduled for 12:00 p.m. Central on April 30, 2012 is reset to 3:00 p.m. Central on the same day.

**I.    THE APPLICABLE LAW**

---

[1] WMS's emergency request for a brief hearing, (Docket Entry No. 19), is denied as moot.

During the pendency of a lawsuit brought under the Copyright Act, that act allows a district court to

> order the impounding, on such terms as it may deem reasonable—(A) of all copies claimed to have been made or used in violation of the exclusive right of the copyright owner; (B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; and (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

17 U.S.C. § 503(a)(1). A court may grant an ex parte application directing impoundment when the plaintiff demonstrates (1) a prima facie case of copyright infringement and (2) "a danger of destruction or hiding of the evidence[.]" *Century Home Entm't, Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638 (E.D.N.Y. 1994); *accord U2 Home Entm't, Inc. v. Chun Pook Tan*, 209 F. Supp. 2d 299, 300 (S.D.N.Y. 2002). This is true even when the district court has already entered an *ex parte* temporary restraining order enjoining the defendant from destroying or hiding the evidence. *See Century Home Entm't*, 209 F. Supp. 2d at 638–39.

Additionally, during the pendency of a lawsuit brought under the Lanham Act, that act allows a district court to grant an ex parte order directing "the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation." 15 U.S.C. § 1116(d)(1)(A). The court may not grant the order without requiring the plaintiff to post "security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure[.]" *Id.* § 1116(d)(4)(A). The court must also find:

>   (i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;
>
>   (ii) the applicant has not publicized the requested seizure;
>
>   (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
>
>   (iv) an immediate and irreparable injury will occur if such seizure is not ordered;
>
>   (v) the matter to be seized will be located at the place identified in the application;
>
>   (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and
>
>   (vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

*Id.* § 1114(d)(4)(B).

## II.   FINDINGS AND CONCLUSIONS

1.   WMS has filed a five-count complaint against the defendants for copyright piracy and infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.* (Count I); infringement and counterfeiting of a federally registered trademark in violation of 15 U.S.C. § 1114(1) (Count II); false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) (Count III); unfair competition and trademark infringement in violation of Texas common law (Count IV); and conversion and equitable restitution in violation of Texas common law (Count V).

2.   As to each count, and for the reasons explained in the TRO, (*see* Docket Entry No.

3

18), WMS has demonstrated a substantial likelihood of success on the merits.

      3.      WMS has demonstrated that, absent the issuance of this ex parte order directing the impoundment of unauthorized copies and the seizure of counterfeited goods, a reasonable danger exists that the defendants will hide, relocate, alter, or destroy the pirated copies of WMS's software, the equipment used to create such pirated copies, and any records of such piracy.

      4.      WMS has demonstrated that it will be irreparably harmed because of the reasonable danger that the defendants will hide, relocate, alter, or destroy the evidence discussed above absent issuance of this ex parte order.

      5.      WMS has sufficiently shown that the injury it will suffer absent issuance of this ex parte order outweighs injury to the defendants from the order's issuance.  Because VIP deals in used gaming machines, parts, and other products that will not be seized or impounded, this order directing the impoundment of unauthorized copies and seizure of counterfeit goods will have only a limited impact on their business operations.

      5.      WMS has demonstrated that an order other than this ex parte seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114.

      6.      The copies, goods, and records to be seized will be located at VIP's place of business, located at 5914 S. Loop in Houston, Texas 77033.

      7.      WMS has not publicized this requested impoundment and seizure.

**III.    ORDER**

      1.      The plaintiff's Ex Parte Application for an Order Directing the Impoundment of Unauthorized Copies and Seizure of Counterfeit Goods, (Docket Entry No. 2), is granted.

2. Pursuant to 15 U.S.C. § 1116(d) and 17 U.S.C. § 503(a), a United States Marshal, other federal law-enforcement officer, or Texas state or local law-enforcement official, or such other person or persons as the Court may appoint (the "Impounding Officer") will effect service of this order (and of all sealed documents currently on the docket), and will initiate the seizure and impoundment (the "Impoundment") before the Preliminary Injunction Hearing currently scheduled for 3:00 p.m. on April 30, 2012 in Courtroom 11-B. Pursuant to 15 U.S.C. § 1116(d)(5), the Impoundment may continue for seven days after the issue date of this order until all items and records have been impounded. In accordance with 15 U.S.C. §§ 1116(d)(1)(A) and 1116(d)(5)(B), the following described items will be seized, impounded, and maintained by the Impounding Officer:

(a) With respect to the defendants' use of a counterfeit mark: (i) all counterfeits of WMS's registered trademarks JACKPOT BLOCK PARTY, JEWELS OF AFRICA, MAYAN SUN, SABERTOOTH, and WILD STAMPEDE, and all gaming software bearing such counterfeit marks; (ii) the means of making such counterfeit marks; and (iii) all records documenting the manufacture, sale, or receipt of things involved in the counterfeiting of these trademarks by the defendants; and

(b) With respect to the defendants' copyright infringement: (i) all unauthorized physical and electronic copies of WMS's Copyrighted Works *Jackpot Block Party*, *Jewels of Africa*, *Mayan Sun*, *Sabertooth*, and *Wild Stampede*, including, but not limited to, all gaming machines, computers, compact flash cards, and other electronic media, and other articles upon which such Copyrighted Works are recorded, saved, installed, or maintained; (ii) all computer equipment, duplication equipment (including flash-card duplicators and "burners"), computer disks, and other

means of reproducing the unauthorized copies of WMS's copyrighted works, including computer programs used to duplicate the copyrighted works, and the computers, media, and other articles upon which such duplications are recorded, saved, or maintained; and (iii) all records documenting the manufacture, sale, or receipt of things involved in any violation of WMS's rights in the Copyrighted Works.

3.      In accordance with 15 U.S.C. § 1116(d)(5)(B), the Impoundment will take place at VIP's place of business, 5914 S. Loop, Houston, Texas 770033, and at such appurtenant, contiguous, or nearby suites, areas, or facilities as may contain items subject to the Impoundment (including equipment bays, closets, and desks), and at such nearby transportation vehicles owned, leased, or used by the defendants or any of their officers, employees, agents, servants, or representatives as may contain items subject to the Impoundment (collectively, the "Impoundment Premises").  If WMS learns of other locations beyond the Impoundment Premises containing items subject to the Impoundment, it may move to extend this order to those locations.

4.      The Impounding Officer may be accompanied during the Impoundment onto the Impoundment Premises by such additional law-enforcement personnel as the Impounding Officer, in consultation with counsel for WMS, deems necessary or advisable to carry out the impoundment or secure the Impoundment Premises.  Additionally, the Impounding Officer will, at WMS's optino, be accompanied onto the premises where the impoundment takes place by (a) WMS's in-house and outside counsel ("Counsel") including Florida counsel from the law firm Peretz Chesal & Hermann, PL; (b) WMS's in-house antipiracy paralegal, Jennifer Havelka; (c) WMS's private investigator Darren McCulley (the "Investigator") of D&L Protective Services; (d) Daniel Reniguntala, a Principal Test Engineer in WMS's Engineering Customer Support Department, or other such

technical expert as WMS may designate in the event that Mr. Reniguntala is unavailable (the "Technical Expert") who can examine and identify gaming machines, computer drives, compact flash memory cards, and other electronic memory devices found at the Impoundment Premises to determine if they contain unauthorized copies of WMS's Copyrighted Works; (e) David Wilson of D6 Consulting (the "Forensic Expert"), who can assist the Impounding Officer and Technical Expert in the examination of gaming machines, computer drives, compact flash memory cards, and other equipment and electronic memory devices found at the Impoundment Premises to locate pirated WMS software and other infringing copies of WMS's Copyrighted Works and the records relating to the defendants' copyright and counterfeiting violations, and identify the computer programs and hardware that the defendants have used to make unauthorized copies of WMS's Copyrighted Works; (f) a photographer, videographer, and/or copier service; and (g) any necessary or advisable assistants and support staff for the foregoing persons.

5.      The Impounding Officer, WMS's Counsel, WMS's Investigator, the Technical Expert, the Forensic Expert, the photographer, the videographer, and the copier service, and their respective assistants and support staffs (collectively, the "Impoundment Personnel") may bring such equipment onto the Impoundment Premises as may be advisable and necessary to carry out the Impoundment, including but not limited to computers, other data-processing equipment, copy machines, video cameras, and digital still cameras.  The Impounding Officer and the Impoundment Personnel may use the facilities and equipment at the Impoundment Premises to make any necessary connections to such equipment, including but not limited to data and power connections.

6. The cost of the Forensic Expert will initially be borne by WMS. This cost allocation, however, is without prejudice to any cost- or fee-shifting that may later occur by action of law or by order of this court.

7. The Impoundment Personnel will conduct the inspection of the Impoundment Premises under the supervision of the Impounding Officer including, without limitation, forensic inspection of any gaming machines, computer drives, compact flash memory cards, and other electronic memory devices found at the Impoundment Premises.

8. WMS's Counsel, in consultation with the Forensic Expert, the Technical Expert, and the Impounding Officer, will determine whether to effect the seizure and impoundment of electronic items by (a) physically removing computers, gaming machines, electronic storage devices, and/or data processing and/or other equipment (collectively, the "Impounded Data Equipment") from the Impounding Premises; (b) by removing information and data from the Impounded Data Equipment, whether by copying, imaging, manipulation of media, or otherwise; or (c) by some combination of (a) and (b). The Forensic Expert is authorized to conduct any such copying, imaging, manipulation of media, or other means of removing information and data from the Impounded Data Equipment.

9. WMS's Counsel, in consultation with the Impounding Officer, will determine whether to effect the Impoundment by physically removing documents, photographs, computer files, or other items from the Impoundment Premises in order to make copies of such documents, computer files, or other items.

10. Upon demand by the Forensic Expert during the Impoundment or after the Impoundment and prior to the Confirmation Hearing, the defendants will provide all passwords and other access devices or information necessary to access information and data on or removed from

the Impounded Data Equipment. The defendants' failure to provide may result in sanctions, such as the costs for any work of the Forensic Experts or other personnel required by the defendants' refusal.

11. The Impoundment Personnel may obtain such other data, informatino, documents, or evidence from the Impoundment Premises as they may deem necessary or advisable, including without limitation by audio recording, still photography, or videography.

12. In accordance with 15 U.S.C. § 1116(d)(7), all materials impounded will be taken into the custody of the court. The court appoints WMS's outside counsel, Peretsz Chesal & Hermmann, PL and Yetter Coleman LLP, and the Forensic Expert as temporary custodians (the "Custodians") of the materials seized or impounded, pending the Confirmation Hearing. Within seven days of the date of the Impoundment's completion, the Custodians will provide to the court and to the defendants a complete inventory of items, property, and other things seized.

13. The defendants or their counsel may, at their own expense, obtain from the Custodians in advance of the Confirmation Hearing or thereafter a copy of any data, information, or other electronic file obtained during the Impoundment including any data, information, and electronic files from the Impounded Data Equipment.

14. In accordance with 15 U.S.C. § 1116(d)(7), the defendants' seized records (and all copies) will be used solely for the purposes of the prosecution of this action and, until further order of this court, will not be disclosed or disseminated to anyone other than WMS, WMS's Counsel and their support staff, the Forensic Expert and other experts or consultants retained on behalf of WMS for the purpose of aiding in the investigation or prosecution of this action.

15. If, during the Impoundment, WMS's Counsel identify articles at the Impoundment Premises that embody or contain unauthorized copies of WMS's registered or unregistered copyrighted works that are not covered by the five copyright registrations identified in this order or counterfeits or trademarks other than the five trademarks identified in this order (the "Suspect Works"), or records or articles of reproduction relating to such Suspect Works, WMS's Counsel may identify the Suspect Works to the Impounding Officer who will immediately direct the defendants to retain the Suspect Works and the articles of reproduction and records relating thereto in their exact location without revising or otherwise interfering with them pending an application by WMS to this court for an order to extend the Impoundment to cover the Suspect Works and the articles of reproduction and records relating thereto. WMS will file an emergency application with this court as soon as practicable, but not to exceed three business days, thereafter seeking to amend this Order to include the Suspect Works. WMS's Counsel may notify the court of the filing of such emergency application by telephone call to this court's case manager.

16. In accordance with 15 U.S.C. § 1116(d)(6), WMS and its agents and attorneys will not publicize, or cause to be publicized, this order or the fact or details of the Impoundment.

17. Pursuant to 15 U.S.C. § 1116(d)(10)(A), unless waived by all parties, this court will hold an Initial Confirmation Hearing at the same time as the Preliminary Injunction Hearing, scheduled for **April 30, 2012 at 3:00 p.m. CDT** in Courtroom 11-B located at the U.S. Courthouse, 515 Rusk, Houston, Texas 77002. The court will schedule a Confirmation Hearing at this April 30 hearing, pursuant to the limitations imposed by 15 U.S.C. § 1116(d)(10)(A).

18. The Impounding Officer will not be held liable for any damages sustained in connection with its execution of its duties under this Order. To the extent necessary to effect the

Impoundment, the Impounding Officer may use such force as may be reasonably necessary (and only as reasonably necessary), such as breaking locks so as to enter the Impoundment Premises.

19. This order will remained sealed. As stated in ¶ 2 and in the TRO, however, WMS must serve copies of this order and all sealed documents currently on the docket to the defendants.

20. The plaintiff must post a cash or surety bond, in the amount of $10,000.00 as security. This amount is adequate for the payment of such damages as the defendants may be entitled to recover as a result of this order. The plaintiff may post a single bond to comply with the bond requirement.

SIGNED on April 27, 2012, at 9:00 a.m, at Houston, Texas.

Lee H. Rosenthal
United States District Judge